Please all rise. Hear ye, hear ye, hear ye. This Honorable Counsel Court of the Second Judicial District is now open pursuant to adjournment. The Honorable Larry S. Haslam presiding. You can be seated, gentlemen. Thank you. Your Honors, this case will adopt Chapter 2-15-0825 of the Second National Bank v. Jafry. We decided to end Chapter 2-15-0825 of the Second National Bank v. Jafry by sending Mr. Kellogg's. Arguing on behalf of the Dependents of Commons, Attorney Mr. Michael A. Brewer. Arguing on behalf of the Places and Appellees, Attorney Mr. Craig C. Westphal. You can proceed. May I please report, Counsel? Good morning, Mr. Westphal. I'm sorry, I'm Mr. Grill. I don't have the names, I'm sorry. You are? Mr. Michael? Mr. Michael Grill. Michael Grill, okay. I'm sorry, I'm looking for you. There we go. Thank you, thank you. Thank you. I'm sorry, Mr. Grill. Let's start over. Good morning, Mr. Grill. Good morning, Your Honor. This case is about preventing a double recovery on a single loan loss. And this is a case of first impression, right? No cases like this in Illinois. There's no cases on these specific facts. There are cases regarding set-offs. There are obviously cases regarding preventing double recoveries. Not in a mortgage foreclosure case. We have not found any cases seeking set-off in the following mortgage foreclosure. Why do you think that is? I think there are several reasons. The first reason is, and as the plaintiffs have admitted, most sales after a foreclosure are for loss. I think the plaintiffs, I believe, acknowledge that in the record at document C958. Do you think also that there were some lawyers who weren't quite as clever as you and didn't come up with it when there were, when it was sold over? I don't believe that's necessarily the reason. I think most of the time you have the loss issue. I think, and I would also say to that point, the trial court mentioned that in 2012 there were 6,000 foreclosure cases on its docket. The reason there were so many was because the bottom fell out of the market at that point. You touch on an interesting point, but let me ask you sort of a blunt question. Are there any public policy reasons that would favor your position or not? Absolutely. Why would we favor your position as a matter of public policy? Absolutely. Aside from the double recovery issue, which is strong public policy in Illinois, I think if the courts were to allow banks to get a gain on a sale, ignore that gain, and then go back to the original debtor to recover a deficiency judgment, that in reality has actually been reduced on a later sale, it would encourage banks in the judicial sale process to, well, particularly in situations where they know they are going to be, or they suspect they will be the bidder, to bid low and then sell high at a later time and then still turn around and go back to the original customer, the original debtor, and extract a double recovery. Well, the original debtor has a remedy under the foreclosure law, under the Mortgage Foreclosure Act that they get to contest the confirmation if it's unconscionable, it's sold below market value. Did your clients contest the confirmation? They did not, and we're not contesting it now. We're not trying to go back and challenge that judgment in any way, shape, or form. Isn't that the venue for that? I think that can be part of the venue, but if the facts change later and a recovery is had based on later facts, the judgment still cannot stand in order to allow a double recovery on the loss. We're still talking about double recovery, but the relationship between these parties has ended once there's a confirmation and a deficiency judgment, has it not? I mean, is there still a duty of good faith and fair dealing between the parties once the relationship has ended? I don't believe there is still a duty of good faith and fair dealing when the relationship has ended, but the fact of the matter is the bank, in this instance, the judgment creditor, recovered collateral for the sole purpose of recovering their loss on the loan. And they recovered the collateral through the process where they made a bid that the court approved as a fair market value bid, your clients didn't contest, and then they ended the deal. Actually, I should go back to that, Your Honor. I was not involved in that portion of the case. My clients, I do believe, did contest at that point. Okay, but they didn't appeal then? They did not. Once the final judgment was entered, once the deficiency judgment was entered, my clients did not challenge that deficiency judgment. Right. Or the amount of the sale, basically, the relationship we're talking about. Right. So you have a situation where you have a secured transaction that closes and ends. It's done. The fact that the bank is the purchaser as opposed to some third party. I mean, you would agree if a third party purchased and sold it for $50 million, your clients would still be on the hook for the deficiency judgment. Absolutely. And you say that this normally doesn't happen because maybe 99.9% of these are sold at a loss. So the bank takes the risk, not that we're all in favor of banks, but the bank takes the risk for 99.9% of the losses that when they happen to get a recovery, after they're now the sole owners of this property, they have to give part of that back. I'd say three things for that. Pardon me? I would say three things in response to that question. One, they're not giving it back. They're not giving it back to anybody. The bank keeps every last cent of that sale. And if they were to profit over the amount that they lost on the loan, they keep every penny of that. So they're not giving anything back. What has happened is the bank's obligation, the bank is still obligated to follow national banking regulations, even after the party's relationship has ended. So the banks can't hold property and speculate on it and hold it as long as they want to in order to make a gain. They're not in the business of real estate barons, for lack of a better term. They are obligated to attempt to sell the property as soon as practicable, and they have to keep all the documents showing that they have made those efforts. The statute and the regulations require the banks to sell it within five years. If they cannot sell it within five years, or for some other good faith serious reason, they can get extensions up to ten years. So their obligations are to sell it. And under the national banking framework, they have to do that because the policies behind that framework were so that property did not get collected in the hands of the banks, and so the banks could get capital so that capital could go through the markets. Counsel, if we were to accede to your position, we would hold that a debtor in a foreclosure action may seek a set-off against a creditor where the creditor or the bank was able to sell the property prior to the commencement of the enforcement proceedings, right? Because that's what happened here. That's what we were asking the court to hold in this case. Do you want to continue with where you were going? Did you have other points to make on that one? I was following you. I apologize. I just wanted to get the framework out and let the court know that, no, I had nothing else to say on that particular. To follow up on what Justice Hudson said, if it's sold ten years later, they get this extension that's sold ten years later at a profit, but the bank has already collected the deficiency judgment, can the debtors, the obligors, go back and ask for that money back? No, we would not. You're talking about an equitable thing here. You're talking about the bank. The bank would still get a double recovery, though. Right. So a double recovery would be allowed in that situation but not in this situation. Well, I think in that situation there's another issue. Similar to we are not challenging the judgment, the deficiency judgment in this case. In a situation where a plaintiff has already paid and that judgment has been entered and then you get beyond the time where you can challenge that judgment and then time drags on and then there is a final sale, that plaintiff would not be able to go and undo that judgment where it had already paid. So if the judgment is satisfied, so to speak, you're not going to come back. Correct. There would probably be a statute of limitations problem with that also, I would think. I'm just speculating. I would think and I would only be speculating on that point of honor, too. I must admit I did not. Do your clients maintain an equitable interest in the property post-confirmation sale? No, they do not claim to have any equitable interest in the property. They do not claim to have any rights in the property at all. Well, they have rights to some of the proceeds, then. No, I disagree with that characterization, Your Honor. The only thing they claim a right to is to not be the source of a double recovery. The proceeds all go to the bank. The bank has a loss here. The bank has one loss on their own. So no money will go to my clients. It simply reduces the amount of the loss that is on the bank's books because they have, through the course of the gainful sale, they've recovered something. So the bank has unencumbered title to the property after the confirmation sale? Unencumbered title to the property. Then why can't they keep the profits? I mean, I just, you know, I understand what you're saying. Your argument has what we would call on this panel intuitive appeal. Okay? Like you're saying that they shouldn't be out this money until the bank is giving extra money. I understand that. But if you look at it as a secured transaction, then it's then satisfied. It's done. The case is over. And the bank has unencumbered title to the property that they could blow up, they could sell at a loss, they could give it to charity, they could do whatever they want with this property, but they happen to sell it for a few bucks more than they paid for it. And, again, what they paid for it was fair market value at the time. You're saying that then your clients get some benefit from this. And a follow-up question to that is where does this end then? Because to have a hearing on what the set-off should be would involve issues of market fluctuation, improvement to the property, taxes paid on the property. And you're talking about a number of factors. It's not as cut and dried as you make it appear. You have a price, then, you know, a bid, and then it's sold at this price, and we get this little set-off amount. I mean, it's not as tidy as that because you're going to open up a can of worms here if the enforcement proceedings are ongoing for five or ten years, and that which they very well may be, if you've got citations ongoing and things like that. And then you've got the sale taking place five or ten years later. Then you've got what happened in this five- to ten-year period is a factual issue, for the trial court to undertake this hearing on, which I don't think was ever brought up. That was a long question. Can you answer it? I think so. I think there are a lot of parts to it and a lot of parts to the way I'd answer, and I'll do my best to keep track of all those. But I think the first thing is that is a hypothetical that is not an issue in this case because what we have here is the confirmation of the judicial sale, the sale of the property and the recovery within four months, followed by the enforcement thereafter. With respect to your question that started off there, why can't the bank keep the profits? The bank can keep the profits. As I said before, they keep every cent. What they cannot do is claim that their loss on the loan is unchanged. So they keep everything, but their loss on the loan has materially changed, particularly in this instance. Do you agree, though, that it would open up the issues that I raised? If the bank says we put money into this property, if the bank says we pay the taxes and market fluctuations, and this, that, and the other thing, does it open that up during the enforcement proceedings? I think it opens it up certainly to an extent, and I'll give you the example for the facts that we're facing here. We have asked for limited discovery in the trial court to determine the exact amount by which the bank gained on the sale and thus reduced its loss. So there will be some discovery issues. Now, in this particular case, given the timeline that I just described, the math is relatively easy. But you do understand in this particular case, as you indicated to Justice Shostak, a case of first impression, that we have to look at your case, we have to resolve your case equitably and fairly, but we also have to understand that we're making a law here that's going to apply to other cases that aren't as tidy. Right. So from the standpoint of, let's say you do have the hypothetical, where enforcement proceedings are begun when the full judgment remains outstanding and the property is not sold yet. At that point, as we've said in our brief, I believe the courts are equipped to deal with claims for set-off and dismiss claims for set-off in those instances because the request at that point is speculative, and courts are equipped to deal with that. They deal with that with respect to speculative damages, for example, and speculative damages are disallowed. In this case, if a plaintiff comes in and says, property hasn't been sold yet, but we have to wait until it is because I could get a set-off. Well, no, that's speculative. You could get a set-off. It's just as likely or more than likely that the bank may sell that at a loss, and there will be no change to the bank's loss. So I think in those cases, you have two situations, our situation and you have the situation that I just described, where it will be easy for courts to deal with. I think you have narrow cases where during the course of the enforcement proceeding, a property is sold before the full deficiency amount is collected. Most likely that's going to happen within five years' time. There is a chance that it could go within the 10 years' time. That is the limit of the national framework. Still shorter than the 21 years in which an enforcement proceeding can be brought and enforced. So it's actually somewhat limited by the federal framework. But the banks are required to keep all the records pursuant to the federal framework of their efforts to sell, and if they do expend money on the collateral to keep its value, and I'm paraphrasing the regulation in that regard, but banks can spend money without approval in order to keep the value of the collateral. Those are records that can be dealt with in limited discovery, and it does become a matter of simple math, and eventually the bank is going to have to put a gain on its books if it makes a gain, or put a loss on its books if it has a loss, and that can be sorted out within likely the five-year time if one of these narrow cases does come up. I don't believe the courts are going to be inundated with these types of suits. I think that is an argument that is not realistic. You'll have an opportunity in rebuttal. Did you find any case I pointed out? Not under these circumstances. I would refer you to the only case that I could find out was Kentucky Joint Stock. It's a Kentucky appellate court case from, believe it or not, 1938, and it's at 119 Southwest 2nd, 873, and they categorize it as a record setter. I'd recommend that reading. Thank you, Mr. Brill. We will see you when you come back up in rebuttal. Okay, Mr. Westphal. If it pleases the Court, I'm counsel Fred Westphal, I'm the head of the World Second National Bank. Defendants speak of general principles of law concerning set-off and double recovery. They cite cases in support of these principles. Then they dismiss differences in facts between their cited case and the present case. What about fairness and equity? Why did they sell this right after the, you know, right pretty close to it? Well, there's a lot of presumptions there, okay? So one of the presumptions that the defendants are making is that the bank's appraisals were wrong. Well, the bank's appraisals were for the date of the foreclosure sale. They weren't for a date six months after. The Court has to presume that the bank's appraisals were correct. Well, regardless of whether the bank's appraisals were correct or were incorrect, does a bank have a duty to attempt to mitigate some of the judgment, to mitigate? I mean, in this case, they mitigated. They got a lot more than what they were asked for. So why should there not be an equitable stopper? Why should they not be able to recover what is above and beyond so they have a windfall? Well, how do you determine what is above and beyond? Well, the judgment is for $800,000. Efficiency judgment, let's say, is for like $300,000. And they sell it for $800,000. Didn't they satisfy that judgment? No. And they own the property. It's theirs. It's theirs for them to do what they want for it. And if you would accept this set-off petition, one of the things you would be doing is saying that whatever the bank's labors are, whatever they put into the property, whatever they bring to the table, their actions, their time, their effort in disposing of the property are irrelevant because that's the position. Couldn't you have a hearing to determine whether or not they put money into it, what expenses they had? Wouldn't those come off? It's not just expenses, okay? You know, banks put time, effort. They bring to experience. They bring savvy to it. You're talking a fair amount of speculation because it's not arithmetic like counsel is saying. Any such a determination would have to give credit towards the bank's actions, and it simply would not be fair if those actions were ignored. And what have the defendants brought to the table? What actions did they bring to increase the price? There's nothing plot here. Well, couldn't you have a hearing to determine what actions? Did the bank say, well, gee, we spent this much money to get the property ready? I mean, I don't know. It's a foreclosure sale. Do they go in and clean up and add new cabinets and new bathrooms? I don't know, but can't that be set out at a hearing to determine what the deficiency is? There are facts, but remember that we have a judicial sale that's already been determined. We should have some finality here and that the bank actually owns the property. And if the bank, is it fair if the bank held the property, maintained the property, managed the property for a period of time that it gets no credit for that period of time? Why can't they get credit? When they have the hearing, why can't they get credit? I would say to you that that would be very difficult or very speculative to try to determine any such credit back or forth. Well, then what would preclude banks from buying low and selling high? Good question. The court should understand the framework of the federal regulations. But before I get into that, let's look at what happens. In the vast majority of cases, we do not experience a profit or an increased price over the foreclosure sale. We experience just the opposite. And that's obvious because there's not been a case like this in the state. Right. And as I already explained, why you have to assume the bank's appraisals were correct. But the other thing is that there's safeguards already in place. Banks are required to have appraisals. They have to have appraisals at least every year and often that they're required to have them six months. Those appraisals are subject to a review process. If the appraisal fails, they have to order a new appraisal. And talk about incentive. Banks have to reserve for loan losses. So if they have any incentive, they want a higher appraisal so that they don't have a bigger loan reserve. So as long as it's translating into, are you saying in so many words that the factual pattern where the bank is going to make an incredible windfall in a foreclosure case is remote? Is that what you're saying? It is rare. I've been practicing for almost 40 years. And it's happened to me about a handful of times. So it's fairly rare. Now, as far as the federal regulation is concerned, the defendants say that there is this continuous chain between the loan and the Oreo sale. And they also say that the purpose of the federal regulations is to recover national banks losses. Well, that's not the case. And you will find that the federal regulations actually decouple the loan loss in this continuum. What the federal regulations require is that once you have that confirmation of sale, you must book the property, the foreclosed property, as an asset. And that, in this case, it was booked as an asset with a value of $954,000. When the bank sold the property at more than $954,000, the regulations required that the bank declare a capital gain. In other words, the bank was required to declare a profit, even though it only partially collected the loan balance. So the federal regulations decouple that continuum that the defendants are saying. So even if you didn't have a deficiency judgment in this case, you'd still have that decoupling? Right. That your profit would only be above the book value? Whatever you sold, whatever you booked the property at. You booked it on, not what you bought it at. No, actually the rules and regulations with regards to that, and usually you book it at somewhere between 5% and 10% less than what you bought it at the foreclosure sale. That's not what happened in this case. I think it did. We booked it at $954,000. And what did they buy it at? I think it was like $1.6 million. I believe that was the appraisal. I'm always thinking and being mindful of the Supreme Court and the trends of our Illinois Supreme Court. And recently the Supreme Court had some foreclosure mediation laws, rules written, Supreme Court rules. And as part of those Supreme Court rule mediation laws, it was clear from those rules, the mediation rules I should say, that the way that the Supreme Court is looking is that they were kind of encouraging or forcing lenders to become more active in loss mitigation. That's kind of what I am reading. Do you think the banks have a duty to attempt to mitigate some of their losses? Well, I do think that banks should mediate or try to mitigate their damages. But that's all prior to the finalization of the case. Okay? We're beyond that. We've already, you know, the history of this case has gone on from the circuit court to the bankruptcy court and back to the circuit court. And we finally reached the confirmation. And now we're in the collection proceeding. So, you know, the time to mitigate has passed. Counsel, let me ask you a technical question. And I realize our discussion here, the potential ruling touches on public policy issues. But you, interestingly enough, have argued that the debtor pled the wrong equitable remedy. There's two types of setoffs, equitable and otherwise. And you've alleged, I believe, that they pled the wrong one. No, I – Or something along those lines. No. They had pled a cause of action called equitable setoff. And there is actually an equitable setoff remedy. If you – there are cases on equitable setoff. And the elements that you need to set forth that cause of action are absent here. And they weren't pled. Now, besides equitable setoff, there are – they're just setoff cases. Don't the courts use those interchangeably, those terms? Those are my next question. Well, as I said, it was my understanding that there is a separate action called equitable setoff. And then there are actions for setoff. I do not dispute that what the defendants are pleading is setoff. I simply dispute that it's equitable setoff. So, and that makes what – how does that impact on the case, then? Simply because they didn't plead the elements of the case that they set forth. But putting that aside, I don't believe that they have pled the elements necessary for a setoff action. They've cited a lot of cases. But those cases require that there be a payment either on the deficiency judgment or on the claim that resulted in the deficiency judgment. And those facts aren't pled. There is no pleading that the defendants or a third party made payments on the deficiency judgment or made payments on the claim that resulted in the deficiency judgment. That's absent here. So, with that being absent, they haven't pled a setoff. All we have in this case is the bank selling an Oreo property, a property that it owns, that it has all right, title, and interest in, who it is responsible for all of the burdens and obligations, and which the defendants at this stage have no interest. That's all that's been pled. How is this any different than a lessee-lessor situation where somebody leaves in the middle of their lease of their apartment, let's say, and the owner says, okay, you owe me for the next six months, gets judgment, and then the next day turns around and leases the property? Should there be a setoff there? I think that when they go to proceed, at least it's my understanding, that when the landlord goes in, he has to prove. He has a duty to mitigate. Yes, he has to prove before he gets the judgment. He has to prove and give credit for a fair rental value if he does that. Right. I appreciate that. I was just being extreme, I guess. But does the bank have a duty to mitigate? It does before the judgment is entered, before the sale is confirmed. The landlord-tenant situation deals with an ongoing relationship where if there wasn't an ongoing lease, there wouldn't be a need for setoff. There wouldn't be an action. Right. Let me ask you this. You said that the defendants didn't properly plead setoff. So is your argument basically then since they didn't properly plead setoff, what they're asking us to do is, in essence, reduce the deficiency judgment when they end up fielding? Yes, I am saying that they didn't properly plead it and that they are asking, they don't have the elements to ask you to set off against the judgment. If they had made partial payment or full payment before the sale? If they had made a payment, okay, or if a third party had made a payment on their behalf and they had pled that, which they didn't, okay, then I think they would have met the elements for setoff. But since they didn't meet the elements, then really that ends the discussion here.  And there's, you know, that did not happen in this case. There were no payments. There were no third party payments. Anything further? No. Thank you, sir. Thank you. Thank you.       Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Mr. Grubb. Thank you, Your Honor. If I could respond to just a few points that Mr. Westphal made. We don't make any assumptions about who was right or wrong with respect to the appraisal. That's watering the bridge. We're not challenging it. What we're challenging is and what we've brought is we're seeking post-judgment setoff based on changed facts in that the bank sold the property at a higher price. Look, if someone came, some third party buyer, which would happen here, a third party buyer bought the property, the collateral, from the bank. But if some sucker comes in and pays $50 million for this property, then the bank reduces its loss. And so any assumptions as to appraisals during the foreclosure process are not an issue. We're not challenging those, Your Honor. I would also say whatever the bank puts in from a cost standpoint, we agree, it gets taken out. So, again, we think this is a simple math issue, particularly in this case. There is an affidavit in the trial court from someone at the bank, I believe, stating that the bank reported a gain on the sale of about $304,000, which would mean about $116 were costs of holding and selling that property in the four months that they had it. Can you address the issue of setoff and the issue that he claims that you didn't allege a claim for setoff? There are two types of setoff, and I think we've tried to address this very clearly. I think we understand the nature of the difference. Right. We're not claiming the type of equitable setoff claim where the bank owes us money and we owe the bank some money and they should be set off. We've not claimed that. In our petition, it was titled the Petition for Equitable Setoff. Perhaps the title could have been Petition for Setoff Pursuant to the Court's Inherent Equitable Powers. It might be a little long. But what we did in that petition was we cited the cases on which we based our claim. We cited all the facts in terms of when the property was foreclosed upon, when the confirmation sale took place, when it was sold, et cetera. There are no facts left out. It was sold to a third party, and the Thornton case, the Starr Charters case, are cited in those petitions. So it's very clear what type of setoff we're seeking. So you're asking us not to exalt form over substance, so to speak? I am absolutely asking you to do that. Because if we were to exalt form over substance, you would, in essence, be asking for us to reduce the deficiency judgment, which we don't have jurisdiction to do at this point. Right. We're not asking that. Well, we're not asking to change the judgment. We're asking to reduce the amount of the loss that the plaintiff, that the defendants have to pay still. Because that loss has been reduced by the gain on the collateral. Mr. Westphal has said that the purpose of the federal framework is not to reduce banks' losses in foreclosure situations. I would point the court to the OCC handbook. I don't have the page for you right now, but there is a portion where it states when the property, the collateral, is sold shortly after it's obtained, the bank can take that as a reduction on the losses. And I believe that's cited in our opening brief. I did not get a chance to get the pin cited as I was sitting there. And those are the only additional points that I have. Anything further? Counsel argued that the federal regulations recognize a decoupling, in essence recognizing the bank's unencumbered possession and title of the property. Do you agree that there's a decoupling, is the argument? I don't agree with the decoupling in the way he characterized it. I think what cannot be decoupled is that there is one loss here. The collateral was obtained to reduce or make up entirely for that loss, and then that collateral was sold according to the federal regulations in order to recover on the loss. That's what that framework is there to do. So there is a decoupling from an ownership perspective. We have no further rights to the property, but we do have a right not to be the source of recovery for a double, the source of a double recovery. Thank you. Thank you, gentlemen. Thank you so much for your arguments here today. We will take this case on consideration and make a decision in due course. Have a good day. Thank you.